### DETERMINED IN THE

# THIRD DEPARTMENT

#### AT

# GENERAL TERM,

## January, 1877.

---

JAMES E. DEWEY AND OTHERS, RESPONDENTS, v. HENRY MOYER AND BETSEY MOYER, IMPLEADED WITH ANOTHER, APPELLANTS.

*Fraudulent conveyance — discharge in bankruptcy of debtor — confession of new judgment by — right of judgment creditor, to maintain action to set aside fraudulent conveyance.*

This action was brought by the plaintiffs, in whose favor the defendant Eldredge had in 1870 confessed judgment upon claims accruing prior to 1858, to set aside as fraudulent certain conveyances made by the said defendant, Eldredge, to the defendants Moyer in 1858. The defendant Eldredge did not appear. The other defendants set up as a bar to the action that the defendant Eldredge had been discharged in bankruptcy in 1858, and upon the trial proved the said discharge and the deed to the assignee made in the course of those proceedings.

*Held,* (1) that as the defendant Eldredge did not set up his discharge in bankruptcy when the judgments were taken against him in 1870, the defendants Moyer could not now dispute their validity.

(2) That the defense, as set up in the answer, was the discharge of the defendant Eldredge in bankruptcy, and not that the right to maintain this action was vested in his assignee therein.

(3) That even if the legal title to the property was and continued, after the bankrupt's discharge, to be in the assignee, yet as he held the same merely as a trustee for the creditors, any one of the *cestuis que trust* might bring an action, providing the assignee was made a party thereto.

(4) That if the assignee was not made a party the defendants must set up this defect in their answer, or otherwise it would be waived. (BOCKES, J., dissenting.)

On the discharge of an assignee in bankruptcy the property of the debtor unadministered by the assignee, passes to the debtor without a reassignment. (Per LEARNED, P. J.)

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

This action was brought by the plaintiffs as judgment creditors of the defendant Clinton Eldredge, for the purpose of collecting their respective judgments, recovered in 1870, upon prior judgments recovered in 1856, out of property alleged to have been fraudulently transferred by the judgment debtor to the defendants Moyer, in 1858. The defendant Eldredge did not appear. The defendants Moyer set up as a defense to the action, first a general denial, and second, " that on or about the 17th day of August, 1858, at Buffalo, in the State of New York, the United States District Court, held in and for the northern district of the State of New.York, duly made an order and a decree discharging the defendant Clinton Eldredge of and from all his debts, of all of which proceedings in the said court in bankruptcy for such discharge the said plaintiffs and their said assignors, and each of them, had due notice ; that the pretended indebtedness, if any such existed, or ever did accrue, accrued prior to the filing of the petition of the said Clinton Eldredge for his discharge from such debts in the said United States District Court, and prior to the granting of such discharge. * * * And the said defendant further answering said complaint, upon her information and belief alleges and avers that the said claims upon which the said pretended judgments, Nos. 4, 5, 6, 7, 8 and 9, as stated in said complaint, are based, were not valid, legal, subsisting claims against the said defendant, Clinton Eldredge, at the time the said judgments were obtained and recovered against him, by the said plaintiffs, as alleged in said complaint, if any such there are; by reason of lapse of time, and by reason of his said discharge from all his debts in the said United States District Court, but that the said judgments, if any exist, are fictitious, invalid and fraudulent, and were obtained by a fraudulent collusion, understanding, agreement and promise, made between said plaintiffs, or some of them, or their attorneys, or some of them, and the said defendant, Clinton Eldredge, that the same should not be enforced against him, nor should any portion thereof be collected from him, or out of his property or effects, but that the same should be only chargeable or attempted to be collected of and from the defendants Moyer, or either of them, for the joint and mutual

benefit of the said plaintiffs and the said defendant, Clinton Eldredge. Wherefore, defendant asks that plaintiffs' complaint be dismissed with costs."

The referee found that the conveyance made by the defendant Eldredge to the defendants Moyer, in 1858, was made with intent to defraud his creditors, and upon the agreement that they should hold the farm for his benefit, and that they would restore it to him, after deducting the amount of their liens then existing thereon, and as conclusions of law:

First. That the defendant Eldredge having waived his discharge in bankruptcy, such discharge is, under the pleadings in this action, unavailable to the other defendants as a defense, and neither it nor the assignment connected therewith, furnishes any bar to the plaintiffs' right of recovery in this action.

Second. That under the pleadings and proofs, the plaintiffs have a perfect right to maintain this action, and are entitled to judgment therein.

*Matthew Hale,* for the appellants. The referee erred in not holding that the proceedings in bankruptcy and the assignment, and debtor's discharge therein, were a bar to the plaintiffs' right of recovery. All the property of the bankrupt vested in the assignee under and by virtue of the appointment of the assignee. (Bankrupt law of 1867, § 14; *Jones* v. *Millbank,* 6 Lans., 73.) No one but the assignee, since his appointment, has had a right to maintain an action to set aside a fraudulent conveyance. (*Goodwin* v. *Sharkey,* 5 Abb. [N. S.], 64; *Stewart* v. *Isidore,* id., 68; *In re Meyers,* 1 B. R., 162; *Thomas* v. *Phillips,* 9 Penn. St., 355; *Pomeroy* v. *Lyman,* 10 Allen, 468; *Williams* v. *Merritt,* 103 Mass., 184.) The discharge granted to Clinton Eldredge was from all his debts, except those specifically excepted by the act. (Bankrupt law, § 32; and as to effect of discharge, see id., § 34.) And the debts were discharged, although the judgment was rendered after the filing of the petition. (*Monroe* v. *Upton,* 50 N. Y., 593.) After the judgment debtor is discharged in bankruptcy, a creditor cannot proceed against his fraudulent transferee. (*Botts* v. *Patton,* 10 B. Mon., 452; *Ocean Bank* v. *Olcott,* 46 N. Y., 12.) The confessions of judgment to plaintiffs by the bankrupt, subsequent to the discharge, do not aid the plaintiffs. They amount

simply to a new promise and create a new debt, enforceable only against newly acquired property of the bankrupt. (*Depuy* v. *Swart*, 3 Wend., 135, 139; *Baker* v. *Wheaton*, 5 Mass., 509, 512; *Linbury* v. *Weightman*, 5 Esp., 198, note; *Roberts* v. *Morgan*, 2 id., 736; *Stearns* v. *Tappen*, 5 Duer, 294, 299; *Carson* v. *Osborn*, 10 B. Mon., 155.) That assignee could maintain suit after and without vacating the discharge, as against a fraudulent grantee, see *Re Dole* (7 B. R., 538). The proceedings in bankruptcy were sufficiently pleaded. (Code, § 161.) A fact necessarily understood or implied forms a part of a pleading as much as if specifically alleged, and a direct allegation of such fact, although proper, is never necessary. (*Partridge* v. *Badger*, 25 Barb., 146, 170; *Hunt* v. *Bennett*, 19 N. Y., 173; 2 Wait's Prac., 315, and cases there cited.) It is unnecessary to state, in pleading, matter of which the court takes judicial notice. (*Swennerton* v. *Ins. Co.*, 37 N. Y., 174; *People* v. *Snyder*, 41 id., 397; *Shaw* v. *Tobias*, 3 Comst., 188, 190.) And the court will take judicial notice of the public statutes of the United States. (*Jack* v. *Martin*, 12 Wend., 311, 329; *Platt* v. *Crawford*, 8 Abb. [N. S.], 297, 304.) The proof showing that the plaintiffs had no title or interest in the property sought to be reached, at the time this action was commenced, their complaint should have been dismissed. It was not necessary to take the objection before the trial. (*Mosselman* v. *Caen*, 1 Hun, 647; *Davis* v. *The Mayor, etc.*, 4 Kern., 506, 526; *Greene* v. *Breck*, 10 Abb., 42; *DeWitt* v. *Chandler*, 11 id., 459.)

*J. E. Dewey*, for the respondent. The discharge was a personal defense for Eldredge only, a personal privilege, which he alone could set up or waive as he chose, like the defense of infancy, which is personal, and none but the infant can avail himself of it. (*Slocum* v. *Hooker*, 13 Barb., 536; *Parker* v. *Baker*, Clarke's Ch., 136–138; *Mason* v. *Dennison*, 15 Wend., 64.) Bankruptcy and infancy are, in this country, put upon the same ground as a personal privilege. (*Slocum* v. *Hooker, supra*; *Blanchard* v. *Caswell*, 7 Gray, 153–155.) So that of the statute of limitations. (*Rawles* v. *The Am. M. L. Ins. Co.*, 27 N. Y., 282, 296; *Hyde* v. *Van Valkenburg*, 1 Daly, 416.) Also, duress and usury, or any other technical or statutory defense. (*Boughton* v. *Smith*, 26 Barb., 635; *Murray* v.

*Judson*, 5 Seld, 73, 83–85; *Farr* v. *Pymer*, 2 Ch. Sent., 20; *Parker* v. *Rochester*, 4 Johns. Ch., 329, 331–333.) So the claim of exemption is personal. ' (*Earl* v. *Camp*, 16 Wend., 563.) So, though a party may, when sued, defend, he is not bound to for the benefit of others, either by insisting upon the statute of frauds (*Cahill* v. *Bigelow*, 18 Pick., 369, 372) or upon lapse of time. (*McCartney* v. *Welch*, 51 N. Y., 626, 627; *Adams* v. *Curtis*, reviewed, 10 Alb. L. J., 274; S. C., 4 Lans., 168, 169, HOGE-BOOM, J.) So, if the judgment is irregular, *he* only can take the objection. (5 Seld., 73, 84.) A bankrupt discharge is waived, and in this case was *waived* by the debtor's not pleading it or defending the suit. (*Price* v. *Peters*, 15 Abb., 197; *Medbury* v. *Swan*, 46 N. Y., 202; *Rudge* v. *Rundell*, 1 T. & Cook, 649, 651.) Even the mere delay or laches of the debtor waives it. (46 N. Y., 200; 3 T. & Cook, 118; S. C., 756; *Barston* v. *Hanson*, 2 Hun, 334.) But a conclusive waiver of the discharge as to everybody was the bankrupt's confession thereafter of these judgments to the plaintiffs. (*Dusenbury* v. *Hoyt*, 53 N. Y., 521; *Stewart* v. *Wilson*, 2 Law and Eq. R., 234, 235.) Like the statute of limitations, a bankrupt discharge never paid or satisfied a debt. (*Johnson* v. *A. and S. R. R. Co.*, 54 N. Y., 416, 426, 427.) Pleading the discharge only was not an averment of an assignment or of an assignee's appointment. (*Sutherland* v. *Davis*, 10 Nat. Bky. Reg. R., 424.) It was necessary to aver the transfer directly, without leaving it to inference, conjecture or presumption. (*Patterson* v. *Taylor*, 8 Barb., 250; *Fisher* v. *Mayor, etc.*, 3 Hun, 649; 3 Den., 314; 6 Seld., 175; 29 Barb., 436, 442.) The making of the assignment was in no sense a *judgment* or *determination* of any court, and these defendants were, therefore, thrown back to the common-law rule requiring an averment of all the facts necessary to give jurisdiction. (Bankrupt act, §§ 11 and 14; Sto. Eq. Pl., § 726, p. 562 [1st ed.]; *Carlton* v. *Leighton*, 3 Meriv., 667; Beames Eq. Pl., 120–122; Cooper Eq. Pl., 249, 250.) This objection now made amounts only to this: that the debtor's assignee had the right, as between him and the plaintiffs, as a trustee, to collect and distribute it to them, and possibly to other creditors, not parties, and who may not get their share. It is, therefore, only an objection, for a defect or want of parties, plaintiff or defendant, which, under the Code,

was *waived* by not taking it by answer. (Code, §§ 144, 147, 148; *Fort Stanwix Bk.* v. *Leggett*, 51 N. Y., 552, 554, 555; *Fox* v. *Moyer*, 54 id., 125, 130; *Merritt* v. *Walsh*, 32 id., 685; *Zabriskie* v. *Smith*, 3 Kern., 322, 336; *Child* v. *Brace*, 4 Pai., 314; *Depuy* v. *Strong*, 3 Keyes, 603–605.) The rights of the bankrupt assignees "are not to be taken into consideration, unless they have themselves interfered." (*Drayton* v. *Dale*, 2 B. & Cress., 293, 295, 297; *Fort Stanwix Bk.* v. *Leggett*, *supra*; *Card* v. *Walbridge*, *supra*; *Freeman* v. *Denning*, *supra*; *Seaman* v. *Stoughton*, 3 Barb. Ch., 349; *Eyster* v. *Gaff* [S. C. U. S.], 13 Alb. L. J., 144, 145.) This is so, even where their rights are claimed either *by* or *against* the bankrupt in a suit to which *he* is a party. (See same cases; also *Sanford* v. *Sanford*, 58 N. Y., 67; *Silke* v. *Osborne*, 1 Esp., 140; *Evans* v. *Brown*, id., 170; *Fowler* v. *Down*, 1 B. & P., 47, 48, 49; *Bird* v. *Pierpoint*, 1 Johns., 126.) And certainly the fraudulent holder has less rights or none at all. The Moyers could not have set up an outstanding title in another without connecting themselves with it. (16 Wend., 563, 571; 11 id., 54, 57; 4 Duer, 438; 16 B., 595–597; 16 How., 547.) Especially so, as against these plaintiffs, whose rights are better than, and prior to those of fraudulent holders. (4 Johns. Ch., 687.)

LEARNED, P. J.:

This action is brought by judgment creditors of Clinton Eldredge to declare certain other judgments in favor of the defendant Betsey Moyer to be fraudulent and void, on the ground that they were intended to defraud creditors; and also to reach property in the hands of the Moyers, alleged to be fraudulently held by them, as against the creditors of said Eldredge. The plaintiffs set up several judgments against Eldredge, recovered in June, September and October, 1870. The causes of action, on which they were recovered, are alleged to have arisen at certain times, prior to June, 1858.

The defendants Moyer, after denying the fraud, aver that on the 17th day of August, 1868, Eldredge was discharged by the United States District Court in bankruptcy from his said indebtedness to the plaintiffs; that their debts were provable in the bankruptcy proceedings, and that the plaintiffs are therefore barred from enforcing the same. On the trial the referee reported in favor of the plaintiffs, and the defendants Moyer appeal.

They insist, now, first : That the debts owing to the plaintiffs, were discharged by the proceedings in bankruptcy. However that may have been, it was for Eldredge to insist upon that discharge, when the judgments were taken against him in 1870. If he chose to waive his discharge, he was at liberty to do so. And if he did waive his discharge, or confess judgment, the defendants Moyer cannot dispute the validity of the judgments. (*Price* v. *Peters*, 15 Abb., 197 ; *Rudge* v. *Rundell*, 1 N. Y. S. C. [T. & C.], 649 ; *Medbury* v. *Swan*, 46 N. Y., 202.) It is not dishonest for a debtor, who has been discharged in bankruptcy, to waive the discharge and allow a judgment to be recovered against him for the original debt. (*Dusenbury* v. *Hoyt*, 53 N. Y., 521.) And if he permits a judgment to be thus recovered against him, the creditor has a right to enforce the judgment against any property of the debtor. One who is in possession of property of the debtor, transferred with intent to defraud creditors, cannot defend himself on the ground that the debtor might have had a defense against the judgment, if he had chosen to assert it.

But the second point, and one which is more strongly urged by the defendants Moyer, is that, after the appointment of an assignee in bankruptcy, he only can bring actions to set aside fraudulent transfers. (*Goodwin* v. *Sharkey*, 5 Abb. [N. S.], 64 ; Rev. Stat. U. S., § 5046.)

The defendants urge, in support of this point, the case of *Ocean Nat. Bank* v. *Olcott* (46 N. Y., 12). But the difference between this case and that, is that the debt of the plaintiffs, in that case, had been discharged, and they were no longer creditors. Hence, it was held that they could not avail themselves of the benefit of 1 Revised Statutes (m. p.), 728, section 52. But in the present case the plaintiffs *are* creditors, and the debts which they now hold have *not been discharged*. And the question is whether persons, who fraudulently took, and still hold, property of the debtor, shall be allowed to retain it, as against these creditors.

The defendants further insist that the present judgments create only a *new* debt, and can only be enforced against newly acquired property of Eldredge. But if this were so, it cannot be urged that a debt can only be enforced against property of the debtor *thereafter* acquired. Furthermore the complaint charged, and the referee

finds that the fraudulent transfer was on a promise to restore the property to Eldredge, the debtor. Such a fraudulent transfer is void against even subsequent creditors. (2 R. S. [m. p.], 135, § 1.)

In reply to this second point of the defendants, the plaintiffs say that, if this were any defense, it was only a defect of parties, not set up in the answer, and therefore waived. (Code, §§ 144, 147, 148.) It is not set up in the answer. The answer only alleges the discharge of the debt, and rests (aside from denial of the fraud) on the allegation that the debt is discharged. It does not aver that an assignee was appointed or that he should be a party to the action.

In the course of the trial copies of the proceedings in bankruptcy were offered in evidence, and objection was taken to their admissibility. They were admitted, and they contain a certified copy of the assignment, made by the register in bankruptcy to the assignee (under Rev. Stat. U. S., § 5044). Now we pass the question, which is urged by the plaintiff, whether this is proper evidence of the execution of the assignment. The proceedings were pertinent to the issue of discharge, and this copy assignment was a part of these proceedings. The reception of these proceedings in evidence was not a waiver (especially when objection was made) of the objection to the consideration of the issue of defect of parties. ( *Williams* v. *M. and F. T. Ins. Co.*, 54 N. Y., 577 ; *Codd* v. *Rathbone*, 19 N. Y., 37.) The defendants set up Eldredge's discharge. The papers given in evidence were admissible to prove that. They did not set up that there was an assignee, and that the right of action was in him only, and therefore the proof (if there was proof) of the appointment of an assignee, coming in under the other issue, does not raise an issue which the defendants did not raise by their pleadings. A defense not pleaded is of no avail. (*Kelsey* v. *Western*, 2 N. Y., 501 ; *Brazill* v. *Isham*, 12 id., 9.)

An assignee in bankruptcy is but a trustee for the creditors, and does not hold the property as of his own right. When he makes a final dividend and renders his account, and it is passed, he is to be discharged from any liability to any creditor. (Rev. Stat. U. S., § 5096.) On his discharge the property reverts to the debtor without a reassignment. (*Colie* v. *Jamison*, 4 Hun, 284.)

While he holds the property the creditors are *cestuis que trust*,

and a *cestui que trust* may bring an action such as this, if he makes the trustee a party. (*Fort Stanwix Bank* v. *Leggett*, 51 N. Y., 552; *Fox* v. *Moyer*, 54 id., 125.) And if he did not make the trustee a party, the defendant must set this up as a defect of parties.

The reasons for this are plain. It does not lie with these defendants Moyer, holding property fraudulently as against Eldredge's creditors, to make this an affirmative defense. The assignee in bankruptcy has made no claim against them. There may be now no other creditors of Eldredge than these plaintiffs. The assignee may have sold to the plaintiffs this property fraudulently held. If, however, the defendants Moyer thought that other persons, creditors of Eldredge, represented by the assignee as their trustee, were entitled to share in the property fraudulently held by them, they should have set up this defect of parties. The plaintiffs might then have had an opportunity to show, for reasons above suggested or for other reasons, that there was no such defect. Another reason might exist why the assignee should not be a party. His right of action is limited to two years. (Rev. Stat. U. S., § 5057.) This time begins to run, in a case like this, from his knowledge of the fraud. (*Bailey* v. *Glover*, 21 Wall., 342.) If the assignee then had had knowledge of this fraud, soon after his appointment, January 22, 1868, his time for commencing an action would have expired before this present action was commenced, in 1872. If that were so, it could not be claimed that the defendants Moyer would be entitled to retain this property, fraudulently transferred, as against judgment creditors of Eldredge.

If the defendants Moyer had set up this defect of parties, and the plaintiffs had chosen so to do, they could have brought in the assignee as a party to the action. But since this defect was not set up in the answer, and the defendants Moyer went to trial on two issues: that of denial of the fraud, and that of a discharge of the debt: and failed on these; it is too late now for them to set up that the assignee should have been a party.

In *Sands* v. *Codwise* (2 Johns., 486), an action was brought by creditors against a bankrupt, making the assignee a party defendant, on the ground of his refusal to prosecute. It was held not necessary to substitute a person who had been appointed a new assignee. From this it appears that the fact of the appointment of an assignee

is not a bar or defense to the action. It only shows a defect of parties. The cause of action is good enough; only, if the defendant so claims, another party should be brought in. But if the defendant waives this, by not setting it up in the answer, then the action proceeds, and the fact that an assignee has been appointed is no defense on the trial.

For it is evident, as above suggested, that there are cases where the assignee would really be only a nominal party; as, for instance, where there were no other creditors but those who had joined as plaintiffs. And we must notice that in this case, the question is not between these judgment creditors, plaintiffs, on the one side and the assignee in bankruptcy on the other. It is between judgment creditors on one side and fraudulent holders of the debtor's property on the other. The defendants Moyer are not trying to protect other creditors (if there be any) of the bankrupt, but they are trying themselves to keep what they took for the purpose of defrauding creditors. If in good faith they had desired to protect other supposed creditors, they should have averred the appointment and existence of an assignee in bankruptcy (if he has not been discharged of his office), and should have caused him to be made a party.

Whether such an assignee could recover of these plaintiffs, as part of the bankrupt's estate, the amount of this present recovery, it is unnecessary to inquire. We have only to do with the liabilities of the defendants Moyer to these present plaintiffs under the issues joined herein.

The judgment should be affirmed, with costs.

BOARDMAN, J. :

The defense of Eldredge's discharge in bankruptcy was not available against the plaintiff to Eldredge or the Moyers; the new judgment, since the discharge, obviates any possible effect of the discharge as to such judgment; that defense was therefore a nullity, and the evidence to sustain it was in fact incompetent and immaterial. Upon the pleadings and proofs, so far as they were effectual and competent, the only issue to be tried was the fraudulent transfer to the Moyers; that is found against the Moyers, and is sustained by the evidence given upon the trial.

But taking the case as it was tried; plaintiff, as a creditor of the bankrupt, had an equitable interest in his assets. The assignee in bankruptcy may have had the legal title, but the latter was not made a party to the action; the defendants do not object to that fact by their answer. Why, then, may not the plaintiff recover, at the peril of being compelled by the assignee to account for and pay over the amount of his recovery for ratable distribution among all the creditors, plaintiff being one? (*Ex Parte Foster*, 2 Story, 131, cited by Justice BOOKES.)

All the creditors are *cestuis que trust*, and alike interested in the amount collected; the assignee is the trustee. I see, therefore, no good reason why the recovery may not be allowed to stand, and the plaintiff be allowed to receive the same, subject to any rights which the assignee in bankruptcy or the other creditors of the bankrupt may have therein. It having been determined that the title of the Moyers is fraudulent, there is very little virtue or propriety in aiding them in retaining the fruits of their fraud, as against a plaintiff who is entitled in equity to the whole or some portion thereof.

I therefore concur with Mr. Justice LEARNED in an affirmance of this judgment with costs.

BOOKES, J. (dissenting):

It is insisted, in the first place, that the defendants Henry and Betsey Moyer have not well pleaded the proceedings in bankruptcy taken by Eldredge, so as to entitle them to the defense urged, to wit: that the right to maintain the action vested in the assignee in bankruptcy only. Those defendants allege in their answers, in substance, that a decree was duly made in the United States District Court, at a time and place named, by which the defendant Eldredge was discharged from his debts; and further, as follows: " of all which proceedings in said court in bankruptcy for such discharge, the plaintiffs had due notice." The discharge of the bankrupt was alleged, as was also knowledge by the plaintiffs of the proceedings in bankruptcy on which the discharge was based; the matter of defense intended to be interposed was distinctly and plainly set forth in the answers, and no objection for informality was raised until on the trial. If the objection was that the answers

were indefinite and uncertain in their averments, it should have been put forward by motion. (Code, § 160.) No objection having been interposed to the pleadings until on the trial, the case stands upon the sufficiency of the defense set up in the answers, and evidence in its support was admissible; even if it were true that those pleadings were obnoxious to objection, had it been raised by motion under section 160 of the Code, or by special demurrer. Again, the United States District Court is not a court of inferior jurisdiction (8 N. Y., 254), nor a foreign tribunal; special averments with a view to show jurisdiction were not, therefore, necessary. Thus it seem that the answers were sufficient under the Code (§ 161) to admit proof of every necessary step required by law to establish the adjudication set forth therein. One of the requisite steps, according to the provisions of the bankrupt law, before a discharge could be granted, was the appointment of an assignee; and the assignment to him, by the judge or register vested in such assignee, the title to all the bankrupt's property by operation of law. It is urged that the averment of the decree for the bankrupt's discharge did not include an allegation of an assignment, or change of the title; the decree of bankruptcy, appointment of an assignee, and the assignment to the latter, were necessary incidents of the discharge; no discharge could be granted without compliance with these formalities; they were therefore within the purview of the answers which averred the discharge, with knowledge to the plaintiffs of the proceedings on which it was based, because a necessary concomitant of it. What is necessarily understood or implied in a pleading, forms a part of it as much as if it were expressed. (*Partridge* v. *Badger*, 25 Barb., 170.) It seems, also, that the referee admitted the evidence as competent under the pleadings; the plaintiffs cannot now insist that this ruling was wrong, and ask that the evidence as admitted be stricken from the case, or be disregarded, for if the evidence had been excluded as incompetent under the pleadings, the defendant could have moved for an amendment. The evidence, however, was received as competent, not in part, but in its entirety, and it was taken into consideration by the referee in his decision of the case; for he finds expressly "that *under the pleadings and proofs* the plaintiffs have a perfect right to maintain this action;" and further, "that the defendant, Eldredge, having waived his discharge

in bankruptcy, such discharge is, under the pleadings in this action, unavailable to the other defendants as a defense, *and neither it* (discharge) *nor the assignment* connected therewith, furnishes any bar to the plaintiffs' right of recovery in this action." It does not lie with the plaintiffs now, as I think, to insist that the evidence received by the referee as competent, was inadmissible by reason of informality in the pleadings, hence now to be disregarded on the appeal; but in point of fact the *bankruptcy* of Eldredge was pleaded, and this was the *alleged defense*. It was proved before the referee, but was held "unavailable" because not interposed by Eldredge himself. We are bound, as I think, to accept the case on the pleadings and proofs as it was made before the referee, and accepted by him, and see whether his conclusion (that under the pleadings and proofs the plaintiffs have a perfect right to maintain the action) was sound in law.

It is insisted, and the referee so held, that the discharge of Eldredge was personal to himself: a personal privilege which he alone could set up or waive as he might elect. This may be, and probably is so, as regards the right to use the discharge as a protection against legal proceedings, having in view the appropriation of his own property to the payment of his debts. Here, however, the case is different and of much broader import. The contest here relates to property to which, he has no title whatever — property all right to which has passed to his creditors by operation of law. In this particular case, indeed, he could not claim the aid of the court in requiring its application to his debts pursuant to the bankrupt law, nor could he claim any surplus that might remain, arising therefrom, after satisfaction of all his debts, for he has concluded himself, by his fraudulent confederation with the Moyers, from all advantages to himself which otherwise might, by a remote possibility, result to him. Now the discharge must be considered with reference to all rights given to his creditors, in its acquirement through the proceedings in the bankruptcy court. Those rights exist, beyond his control, by virtue of those proceedings. They are settled and definitely determined by law. As regards the creditors' rights, he is put aside. To adopt the language of Judge STORY, the bankrupt act "manifestly contemplates that as to all property and rights of property of the bankrupt, and as to all suits in law and

equity pending, in which the bankrupt is a party, the bankrupt is to be treated as if he were *civiliter mortuus*, and all his property and rights of property were vested in the assignee, as his executor or administrator." So he has no longer any power for good or harm to the creditors. Therefore, whether he waive or assert his privilege, it can in no way affect any person in his claim to the property liable to his debts, hence cannot deprive even a fraudulent holder of his right to show where the title rests, to the end that he may continue in its enjoyment until called upon to surrender it by the person or persons to whom it by law belongs. So the fraudulent grantees in this case may set up and show that the right sought to be enforced by the plaintiffs does not belong to them to exercise. This defense inheres to them. They cannot be deprived of it by any thing that Eldredge may do or may omit to do. They will stand or fall by their own pleading, and the matters of defense therein alleged. So whether Eldredge assert this privilege and set up his discharge, or omit to do so, it in no way affects either his creditors or the Moyers in their rights. And it follows that his confessions of judgment for the debts barred by his discharge cannot operate to their disadvantage. · I understand it to have been repeatedly decided that the debtor's bankruptcy may be pleaded in bar to a creditor's bill brought by individual creditors, after bankruptcy, by any of the defendants; or, which is the same thing, that such defense is available to defeat the action; and this brings us to consider the real and true question in this case. Eldredge's bankruptcy was pleaded and proved in this action, and it stands certified in the record as a fact found by the referee. Did such fact bar this action by the creditors? Did the right to maintain this action rest with the assignee in bankruptcy only? The referee held that Eldredge's bankruptcy did not bar the action by his creditors.· He held that, neither the discharge of Eldredge from his debts under the bankrupt law, nor the assignment connected therewith furnished any bar to the plaintiffs' right of recovery, as prayed for in the complaint. In this conclusion of law, I think, the learned referee was in error. The plaintiffs had no lien on the property held by the Moyers in fraud of the rights of the creditors of Eldredge, and by this action sought to be reached and applied in satisfaction of their demands, when the assignment was

made to the assignee in bankruptcy, and the transfer became effectual to vest in the latter all the bankrupt's property, including the right to this property in suit. Now, all rights in regard to this property having vested in the assignee for the benefit of the creditors generally, the latter became, to all intents and purposes, the trustee for all; and it rested with him alone, as assignee to take proceedings against the fraudulent transferees of Eldredge's property to obtain it and its avails for general and equal distribution. It was well said in *Goodwin* v. *Sharkey* (5 Abbott [N. S.], 64, 68), that by force of the bankrupt law, and in virtue of the proceedings taken under it, the assignee represents and has become a trustee for all the creditors of the bankrupt, as well as for the bankrupt himself, and is vested with every right which was possessed either by the bankrupt or the creditors in respect to fraudulent conveyances; and it was also stated in the same case, that if the property, or the right to recover it, be vested in the assignee in bankruptcy for the equal benefit of all the creditors, it needs no argument to prove that no one creditor can, through the agency of the State laws, obtain a preference over other creditors, or the application of any part of the bankrupt's property for his exclusive benefit. These views are, undoubtedly, sound, and they are the universal expression of the courts on the subject. (*Lowry* v. *Coulter*, 9 Penn. St. Rep., 353; *Thurmond* v. *Andrews*, 13 N. B. Reg. Rep., 157; *McCabe* v. *Cooney*, 2 Sandf. Ch. [m. p.], 314; 10 B. Mon., 452; *Ocean National Bank* v. *Olcott*, 46 N. Y., 12.) The cases all hold that, by virtue of the bankruptcy proceedings, the bankrupt's property, as well as all rights of creditors touching property fraudulently transferred by him, are brought within the exclusive custody and control of the bankruptcy court. In this way only can an equal distribution among all the creditors be secured. The bankrupt law is based on the principle that "equality is equity," and whatever countervails the object and policy of the law operates as a fraud upon its provisions. So it was laid down in principle by Judge STORY in *Ex parte Foster* (2 Story, 131), that if a creditor, knowing of the proceedings in bankruptcy, should, by a proceeding in a State court, appropriate the property of the bankrupt, or its avails, to his individual debt, it would be a fraud upon the law, and he would not be allowed to hold the money

thus acquired. It seems, therefore, well settled, both on principle and authority that, after the debtor is in bankruptcy, no one but the assignee can maintain an action to set aside a fraudulent conveyance made by the bankrupt, or to reach property held by third parties in fraud of the creditors' rights. This being the settled rule of law, the referee was in error in holding that the proceedings in bankruptcy put in evidence in this case did not bar the action.

It is urged that the assignee has not intervened to obtain the property from the fraudulent holders, and *non constat* that he ever will take proceedings for that purpose; and that if he does not, or will not, then the fraudulent holders will continue unmolested in the fraud, and the creditors of Eldredge will be wholly remediless in the premises. But this is a mistaken view of the case, as regards the latter branch of the proposition. In the first place, even if the assignee has omitted his duty, it is enough for the defendants to show that the plaintiffs have no ground of action on the facts charged and proved. However groundless the defendants' position may be when the righful party demands the property, it is sufficient for them to show that the plaintiffs have no right to it under the proceedings which they have adopted for redress. But while it is held, that the right to proceed to set aside a fraudulent transfer of property by a bankrupt, rests with the assignee, and with him alone in the performance of his proper and lawful trust obligations, still, when he violates those obligations by an inexcusable neglect, or willful omission of duty in that behalf, the creditors have an ample and efficient remedy. Their position is like that of creditors of a deceased debtor. It is the duty of an executor or administrator of a deceased debtor, whose estate is insolvent, to impeach the sale of personal property made by the deceased with intent to defraud creditors, and recover the same from the fraudulent vendee; and ordinarily a creditor of the estate cannot maintain an action against such fraudulent vendee alone, or against him and the executor or administrator to set aside the fraudulent transfer and have the property held under it, administered as assets to pay debts. Yet, if the executor or administrator collude with the fraudulent vendee, or after reasonable request refuse to take proceedings to impeach his title and reach the property in his hands, a creditor may maintain an action against him and the executor or administra-

tor for that purpose. (*Bate* v. *Graham*, 11 N. Y., 237.) There was a similar ruling in the early case of *Sands* v. *Codwise* (4 Johns., 536), which, in many of its features resembles the one in hand. That was an action in equity by the creditors of Comfort Sands to set aside various fraudulent transfers of property, and to have the property and its avails applied on their claims and demands. Sands had been put in bankruptcy, and one Kibbe had been appointed assignee, in whom all rights of property pertaining to the bankrupt and his estate, had vested. In that case, unlike this one at bar, the assignee, Kibbe, was made a party defendant; and *in order to give the case standing in court*, it was charged against Kibbe, that the complainants had applied to him for permission to use his name in such proceedings at law or in equity, as should be necessary for the creditors of Sands to obtain justice, and to have the property, which had been fraudulently conveyed or concealed, applied to the payment of his debts, and had offered, in case he would consent, to indemnify him against all costs and expenses; but that Kibbe declined, and took no steps to get possession of the property so conveyed. Kibbe appeared in the suit and answered the complaint. He admitted that upon application of the complainants, he had refused to prosecute the suit, but insisted that if the deeds should be set aside, then the proceeds of the estate should be paid to him, to be distributed according to law. The court sustained this claim of the assignee. It was decided, (1) that the creditors could maintain the action, but only through the assignee's title by making him a party, and on the ground that he had neglected or violated his duty as assignee in refusing to prosecute the action himself; and (2) that the avails of the property obtained under the proceeding should be paid over to him for general distribution among all the creditors, according to the provisions of the bankruptcy act. In this case the objection that the action could not be maintained, because the creditors could not be admitted to substitute themselves for the assignee, was answered by the chancellor thus: that being interested in the fund intrusted to the management of the assignee, and the latter having neglected or refused to do the duties legally imposed on him, the creditors might pursue their interests by bringing the action themselves at the peril of costs, and he puts the right to maintain the action by the creditors expressly on this

ground. In another part of the opinion the chancellor further remarked as follows: "If the defendant, Kibbe, had not grossly neglected his duty as assignee, the latter must, of course, as the legal organ, constituted under the laws of the United States to manage the interests of the creditors, retain the power of managing it in his discretion for the benefit of those creditors generally; for the right of the complainants (creditors) to prosecute, must originate in some palpable neglect or positive refusal of the assignee to perform a duty apparently in advancement of the trust, as to the precise subject in which the creditors collectively seek to establish their rights;" and he adds, "it was not pretended that the Court of Chancery could change the assignee; all that could be expected was to enable the parties in interest to enforce the rights which the assignee was disinclined, either from negligence or sinister motives, to give effect to;" so the action was upheld on the ground of necessity, in order to prevent a failure of justice. This was also the basis of the decision in *Bate* v. *Graham* (*supra*); these views of the chancellor received the sanction of all the members of the Court of Errors who took part in its decision. Judge SPENCER, in a few terse sentences, put the case in a clear light; he observed, "that whenever an assignee declines to act, the creditors have a right to institute a suit for the benefit of all the creditors; by the law of the United States, the property of the bankrupt is vested in his assignees; the conveyances being adjudged fraudulent and void, the property remained in Comfort Sands, and by the bankrupt law became vested in his assignees; the conveyances were void at common law, but the Court of Chancery had a concurrent jurisdiction, it being a case of fraud, and the application to that court was merely for the purpose of avoiding the conveyances. It does not follow that because the Court of Chancery had this cognizance of the cause, it is to take the property out of the hands of the assignee and place it in the hands of a master; having disencumbered the estate of the conveyances, the property remained as if those deeds had never existed, *and being vested by the law of the United States in the assignee, no court can divest it.*" I have quoted freely and perhaps needlessly from this case, but it seemed to me that the great similarity between that and the one in hand, *on the facts*, gave pertinency and directness here to the remarks and line of

reasoning of the distinguished jurist who had the case under consideration. The only difference between the two cases *on the facts* is this, that here the bankrupt confessed judgment on the discharged debts. But this, as we have seen, could not in any way affect his creditors in their rights, secured to them by the bankruptcy law. As said by Judge STORY, as to those rights he was *civiliter mortuus ;* hence, the galvanizing of him into activity, was impotent to defeat the provisions of the law. It is urged that in the case now before the court, the absence of the assignee from the record only raises a question of defect of parties plaintiff, or defendant, and the objection that there is a defect of parties must be deemed waived because not raised by answer. But it must be held in mind (the bankruptcy proceedings being in evidence) that the plaintiff's claim or right to the property, sought to be reached in this action, is solely and only through the assignee. This is the defense in the action. The defendants set up and prove the bankruptcy proceedings to establish the defense, to wit : that the plaintiffs have no right of action save through the assignee and under his title or right. This was held in the case above cited (*Sands v. Codwise.*) It was there held that the creditors of the bankrupt might maintain the action, but only through the assignee and his title ; and on distinct and issuable averments in the complaint that he had neglected or violated his duty. Therefore, in the absence of the assignee from the record, and without such averment, the plaintiffs fail to show any right in themselves, to take the proceeding. The chancellor said, and sustained the right of action on this ground, that the right of the creditors "to prosecute must originate in some palpable neglect or positive refusal of the assignee to perform his duty." This is the doctrine laid down in *Bate* v. *Graham.* It was there held, in substance, that the action could not be maintained by the creditors, except upon the fact proved or admitted by the pleadings, that the administrator was acting collusively, or in some way in violation of his duty, and to save the case, force and effect was given to his answer, wherein he denied that the assignment sought to be impeached, was made or executed with fraudulent intent. The difficulty in this case is therefore of a more serious character than is one resting simply on a defect of parties. It reaches the plaintiffs' right to take the proceeding ; goes to their

right to maintain the action; such right, under the proof in this case as it now stands, rests with the assignee solely. Until it be made to appear that he has refused to prosecute, or has in some way so conducted that the right to prosecute has been cast over to the creditors, they are without right of action, and it may be here added that if the right had been so cast over to them, they must effectuate their purpose of reaching the property in controversy *through the assignee and his title or right.* There is nothing in the pleadings, or in the proof, showing a transfer to the creditors of a right of action; nor was the case tried, nor is it now presented for our consideration, on any such hypothesis. As above suggested, the difficulty is not merely one growing out of a defect of parties plaintiff or defendant, but it reaches the right of the plaintiffs to maintain the action on the theory of the complaint, on which theory it was tried and decided by the referee. The conclusions herein above reached, if sound, require a reversal of the judgment appealed from. I am of the opinion that on the facts here proved, the creditors of Eldredge could not maintain this action to reach the property in controversy, or its avails, except through the assignee in bankruptcy, under his title and rights as assignee, on the ground that he had neglected or refused to perform his duty in that behalf; and further, that the avails resulting from a successful prosecution of the suit would belong to all the creditors, for distribution according to the provisions of the bankrupt law.

Judgment should be reversed and a new trial ordered, with costs to abide the event.

Judgment affirmed, with costs.