THE OCEAN NATIONAL BANK OF NEW YORK, Appellant, *v.* KATE G. OLCOTT and CORNELIUS OLCOTT, Respondents.

A certificate of discharge issued under the bankrupt act of 1867, cannot be impeached in a State court on the ground that it was improperly granted.

In an action brought after a debtor's discharge in bankruptcy, to enforce a lien upon property held by the debtor's wife, claimed to have existed at the time of the discharge, under the provisions of sections 51 and 52 of the statute of uses and trusts (1 R. S., Edmonds' ed., 677, §§ 51 and 52).

*Held,* that those sections do not give a specific lien upon the property, but an equitable right to be enforced by suit in equity, after all *available* legal remedies are exhausted; that the commencement of the equitable action and filing of *lis pendens* is necessary to constitute a lien, and that as in this case, before the commencement of such action, the judgment or debt, which is the foundation thereof, was extinguished, the relation of debtor and creditor did not exist, and the action would not lie.

*McCartney* v. *Bostwick,* 32 N. Y., 53, commented on.

(Argued June 7th, 1871; decided September 2d, 1871.)

APPEAL from judgment of the General Term of the first department, reversing an order of the Special Term, overruling demurrer to plaintiff's reply and sustaining demurrer to the fourth and fifth counts of defendant's answer.

This action is in the nature of a creditor's bill, on a judgment recovered by the plaintiff against the defendant, Cornelius Olcott, on the 15th of April, 1861. And the allegations in the complaint are, that since the judgment said defendant has paid, of his own moneys, for certain real estate, the conveyance of which was taken by and in the name of the defendant, Kate G. Olcott, the wife of the other defendant, in fraud

of his creditors. The answer denies all these allegations of fraud, and sets up the defence: That since the judgment, and before this action was commenced, the defendant, Cornelius Olcott, obtained a discharge in bankruptcy, under the act of congress of 1867, and was thereby fully discharged from all his debts, the aforesaid judgment included.

The plaintiff replied to the defence of the discharge in bankruptcy, alleging that said discharge was fraudulently obtained, and setting forth the frauds complained of.

The defendant demurred to the reply, that it does not state facts sufficient to constitute a reply.

*P. J. Gage*, for the appellant, that as the real estate was transferred to the wife in fraud of plaintiff's assignor, a trust results to the creditor. (1 R. S., Edmond's ed., 677, §§ 51 and 52; *Garfield* v. *Hatmaker*, 15 N. Y., 478, 479; *Wood* v. *Robinson*, 22 N. Y., 564–66; *McCartney* v. *Bostwick*, 32 N. Y., 53, 60; Bankrupt Act, § 33.) That the bankrupt act simply affects remedy, and does not discharge debtor. (*In re Sevy et al.*, 1 Bankrupt Regis., 66.) If plaintiff's judgment was a lien, it is not removed by a discharge obtained after such lien attached. (*Bates* v. *Tappan*, 3 Bankrupt Regis., 159; *Same Case*, 99 Mass. R., 376; *Bowman* v. *Harding*, 4 Bankrupt Regis., 5; *Same Case*, 56 Maine, 559; *Brewster* v. *Power*, 10 Paige, 562, 569; *Payne, et al.*, v. *Able, et al.*, 4 Bankrupt Regis., 67.) On trial of issue raised by demurrer to the reply, the plaintiff was at liberty to attack the answer for insufficiency. (*Holliday* v. *Noble*, 1 Barb. R., 153; *White* v. *Joy*, 13 N. Y. R., 83; *People, etc.*, v. *Booth*, 32 N. Y. R., 397; Code, §§ 144 and 148.) That all liens, *statutory*, as well as others, are protected and preserved by the bankrupt act. (See act, §§ 14 and 20 *In re Gregg*, 3 B. R., 131; *In re Scott*, 3 B. R., 181; *In re Wynne*, 4 B. R., 5.) That a party having a lien may enforce, after discharge granted. (*Jones* v. *Tellgett*, 39 Geo., 64.)

*Richard H. Huntly*, for the respondent, that if discharge in bankruptcy is not well pleaded, objection is waived by the

reply. (*Jenkins* v. *Stanley*, 10 Mass., 226.) That discharge cannot be attacked when pleaded as a defence. (*Chemung Canal Bank* v. *Judson*, 8 N. Y., 254; judiciary act of September 24, 1789; 1 Stat. at Large, 76, § 9; *Wheeler* v. *Raymond*, 8 Cowen, 311; *Caryl* v. *Russell*, 13 N. Y., 194, 198; *Breerton* v. *Hull*, 1 Denio, 75.) That discharge attacks the debt, and destroys all obligation for its payment. (*Ogden* v. *Saunders*, 12 Wheaton, 303; *McMillan* v. *McNeil*, 4 Wheaton, 209; *Farmers' and Mechanics' Bank of Penn.* v. *Smith*, 6 Wheaton, 131; *Ruckman* v. *Cowell*, 1 N. Y., 505; *Clark* v. *Rowling*, 3 N. Y., 216; *Dresser* v. *Brooks*, 3 Barb., 429; *Fox* v. *Woodruff*, 9 Barb., 498; *Depuy* v. *Swart*, 3 Wendell, 135; *Baker* v. *Wheaton*, 5 Mass., 509; *Moore* v. *Veile*, 4 Wendell, 420; *Dean* v. *Hewit*, 5 Wendell, 257, 262; *Martin* v. *Bush*, 16 Johnson, 233, 252; *Roosevelt* v. *Champlin*, 17 Johns., 108; *In the Matter of Daniel T. Wendell*, 19 Johns., 153; *Hubbell* v. *Cramp*, 11 Paige, 310; *In the Matter of Coates and Hillard*, 12 How. Pr., 344, 350, in Court of Appeals, 1856; *Tobias* v. *Rogers*, 13 N. Y., 59.) This action does not lie until all the remedies at law are exhausted, including return of execution. (*Mickles* v. *Brayton*, 10 Paige, 138; *Penniman* v. *Norton*, 1 Barb. Ch., 246; *Johnson* v. *Fitzhugh*, 3 Barb. Ch., 360; *Weed* v. *Pierce*, 9 Cowen, 722, 728; *Beck* v. *Burdett*, 1 Paige, 305; *Edmeston* v. *Lyde*, 1 Paige, 637; *McDermott* v. *Strong*, 4 Johns. Ch., 687, 691; *Corning* v. *White*, 2 Paige, 567; *Clarkson* v. *DePeyster*, 3 Paige, 319; *Utica Insurance Co.* v. *Power*, 3 Paige, 365; *Chautauqua County Bank* v. *White*, 6 N. Y., 236–252; *Storm* v. *Waddell*, 2 Sandf. Ch., 494.)

CHURCH, Ch. J. The two principal questions in this case are: 1. Whether a certificate of discharge in bankruptcy, issued under the bankrupt act of 1867, can be impeached in a State court, on the ground that it was improperly granted? and, 2. Whether the plaintiff can enforce the judgment, against the property conveyed to the defendant, Kate G.

Olcott, wife of the other defendant Cornelius Olcott, not-withstanding his discharge in bankruptcy?

The Constitution of the United States confers upon Congress, power to establish uniform laws on the subject of bankruptcies throughout the United States. This, like all other powers, is exclusive when exercised by congress. By the thirty-fourth section of the bankrupt act of 1867, a mode of attacking the discharge, is prescribed in the court which issued it, on the ground that it was fraudulently obtained. A creditor, therefore, seeking to invalidate the discharge for that reason, must pursue the remedy prescribed in the act. Otherwise the certificate is declared, to be "conclusive evidence" in favor of such bankrupt of the fact, and the regularity of the discharge. It follows that neither in any other mode, nor in any other court can the discharge be questioned, on the ground that it was improperly granted. Besides the plaintiffs have alleged in the reply, that they have made application to the United States court, to set aside the discharge for the frauds alleged to invalidate it in this case, and if the State court should entertain concurrent jurisdiction to try the same questions, a conflict of judgment and authority might result in a case clearly within the cognizance of the federal courts. In this respect the act of 1867, is unlike the act of 1841, which contained no provision for setting aside the discharge, but permitted its impeachment whenever it was interposed as a defence. We must therefore regard the discharge as valid for the purposes of this action.

The second point presents the important question in the case. It comes up on demurrer to the reply, and the plaintiff seeks to attack the answer, setting up the discharge, on the ground that it constitutes no defence to the action. In determining this question, we must take the allegations in the complaint as true. It is alleged, in substance, that after the plaintiff's debt was contracted, the defendant, Cornelius Olcott, purchased and paid the consideration for a large quantity of real estate, which was conveyed to his wife, and which, by this action, the plaintiffs seek to reach, for the purpose of

satisfying their demand.  Judgment was obtained against Olcott before the bankrupt discharge was obtained, but this action was not commenced until after that time.  A discharge in bankruptcy extinguishes the debt against the bankrupt. The judgment became extinguished, and the demands upon which it was rendered. (*Ruckman* v. *Cowell*, 1 N. Y., 505; *Depuy* v. *Swart*, 3 Wend., 135; *Baker* v. *Wheaton*, 5 Mass., 509.)  In the language of the act, the discharge releases " the bankrupt from all debts, claims, liabilities and demands, which were or might have been proved against his estate in bankruptcy, and may be pleaded  *  *  *  *  as a full and complete bar to all suits brought on any such debts, claims liabilities or demands."

It is claimed by the plaintiffs, that as creditors they had, by virtue of the fifty-first and fifty-second sections of the statute of uses and trusts, a lien upon the property held by the wife, the consideration for which was paid by the debtor, and that such lien existed at the time the discharge was granted, and was not affected by it.

Prior to the Revised Statutes, where the consideration for land was paid by one person, and the land was conveyed to another, a trust resulted to the person paying the consideration, and the interest of such person might be taken and sold on execution, and the legal title thereby transferred to the purchaser. (1 R. S., 74; *Guthrie* v. *Gardner*, 19 Wend., 414; *Jackson* v. *Walker*, 4 Wend., 462.)  The Revised Statutes changed this rule, by providing in the fifty-first section, that no use or trust shall result in favor of the person by whom the payment is made, but that the title shall vest in the person named as alienee in such conveyance, subject only to the provisions of section 52, which declares that every such conveyance " shall be presumed fraudulent as against the creditors, at the time, of the person paying the consideration, and that when a fraudulent intent is not disproved, a trust shall result in favor of such creditors to the extent that may be necessary to satisfy their just demands."  This change was probably made to prevent an evasion of the general policy of

the statute prohibiting trusts, except for a few specified purposes. It is obvious that the interest or right, or whatever it may be termed, secured to creditors by this statute, is an equitable interest, enforceable only in equity. A trust results, not of the whole property, but sufficient. only to satisfy the just claims of creditors; not of one creditor only, but of all creditors. Except as against creditors, the title is perfect in the grantee, and as against them it is perfect, if the grantee can disprove a fraudulent intent. The rights of both creditors and grantee can only be properly adjusted and enforced, in a proceeding in equity, where all interested persons can be made parties, and a sale and proper distribution of the proceeds can be made. That this is an equitable and not a legal interest, to be enforced in a court of equity, was decided in this court in *Garfield* v. *Hatmaker* (15 N. Y., 475).

The bankrupt act preserves the rights of creditors by mortgage, pledge, or other lien upon the property of the bankrupt, and the assignee takes the property subject to it (sections 14, 20), and of course a valid lien against the property of a third person would not be affected by the discharge.

Although there may be some apparent confusion from the use of terms, I do not think the interest of the creditors constitutes a lien, within the meaning of the bankrupt act; nor in any such legal sense as to give creditors a priority, except by means of the usual equitable remedies. A lien is not a property in the thing itself, nor does it constitute a mere right of action for the thing. It more properly constitutes a charge upon the thing. (1 Story's Eq., § 506 ; 1. Burrill Law Dict., title "*Lien.*") In some general sense, creditors have an equitable lien upon the property thus situated. So they would have, if a general liability, instead of a resulting trust had been declared. So debts are an equitable lien upon property fraudulently transferred by a debtor; and it may be said that every debtor is a trustee for his creditors' and bound to use his property for their benefit, and that creditors have an equitable lien upon the property of the debtor. But in all these cases the usual remedies are to be pursued to create and enforce the lien before

a specific charge constituting an encumbrance is created. There is no mystery in the term *resulting trust*. After adopting the fifty-first section, it was indispensable to make some provision to preserve the rights of creditors, otherwise the grantee would have held the title absolutely against creditors and all others. Hence the fifty-second section was adopted, which placed the property in the same relation to creditors as it would have been, if the debtor himself had fraudulently transferred it, and the words used were appropriate for that purpose. The object of the statute was to cut off all interest in the person paying the consideration, and then to declare property liable for his debts; but this liability can only be enforced in the usual mode. A creditor at large cannot enforce the liability, without a preliminary judgment and execution. When the legislature transformed this from a legal into an equitable interest, we must presume that they intended, to apply equitable rules and principles existing at the time for its enforcement. One of them is, that before the equitable interests of a debtor can be reached in equity, all available legal remedies must be exhausted. It is not necessary to hold that such an action is, in strictness, a creditor's bill, and that jurisdiction depends upon a technical compliance with the statute. The general powers of a court of equity over trusts and frauds, may be conceded as sufficient to confer jurisdiction, but this concession does not dispense with the rule of equity, which existed prior to and independently of the statute, that creditors must exhaust available, legal remedies, before resorting to courts of equity to reach equitable interests. In 1 Paige, 305, the chancellor laid down the rule of equity established before the Revised Statutes, as follows: " There are two classes of cases where a plaintiff is permitted to come into this court for relief after he has proceeded to judgment and execution at law, without obtaining satisfaction of his debt. In one case the issuing of an execution gives to the plaintiff a lien upon the property ; but he is compelled to come here for the purpose of removing some obstruction, fraudulently, or inequitably interposed, to prevent

a sale on the execution. In the other, the plaintiff comes here to obtain satisfaction of his debt, out of property which cannot be reached by execution at law. In the latter case, his right to relief here depends upon the fact of his having exhausted his legal remedies without being able to obtain satisfaction of his judgment." (*Wiggins* v. *Armstrong*, 2 J. Ch., 144, id. 283; *Brinkerhoff* v. *Brown*, 4 J. Ch., 671, and cases there cited.)

The foundation of courts of equity is to exercise jurisdiction, "in cases of rights recognized and protected by municipal jurisprudence, where a plain, adequate and complete remedy cannot be had in courts of law." (1 Story's Eq., Juris., § 33.) Legal remedies are the cheapest and most expeditious for creditors, and in this class of cases they protect both creditor and the person holding the title.

As between the grantor and debtor, the latter is bound, both in law and equity, to pay his debts from other property if he has it; and the dictates of propriety, as well as the established rules of equity, require that resort should in the first instance be had to such other property, if it can be reached by the ordinary process of law. This question is only pertinent in this case, as an argument to elucidate the nature of the interest of creditors under this statute. Although the indorsement of the execution "*nulla bona*" was not filed, it was actually made, which, with the other facts alleged, may be regarded a substantial compliance with the equity rule referred to. But neither the judgment nor execution constituted a lien upon equitable interests. The commencement of the equitable action and the filing of the *lis pendens* was necessary for that purpose. This is well settled in analogous cases. In *Edgell* v. *Haywood* (3 Atk., 357), Lord Chancellor HARDWICKE held, that a *bona fide* assignment of such property after judgment and execution would be valid, and added: "But after a bill brought, and a *lis pendens* created, as to this thing, such assignment could not prevail." (*Weed* v. *Pierce*, 9 Cow., 722; *Corning* v. *White*, 2 Paige, 567; *Spader* v. *Davis*,

5 J. Ch., 280; *Edmeston* v. *Lyde,* 1 Paige, 637.) Judge STORY lays down the general rule that, "courts will also enforce the security of a judgment creditor against the equitable interest in the freehold estate of his debtor, treating the judgment as in the nature of a lien upon such equitable interest. But *in all cases of this sort,* the judgment creditor must have pursued the same steps as he would have been obliged to do to perfect his lien, if the estate had been legal." (Story's Eq., Jur., § 1216; *Neate* v. *Duke of Marlborough,* 3 Myl. & Craig, 407, 415.)

The nature of the interest of creditors under this statute, and the remedy to enforce such interest, have not been definitely settled by the courts of this State. *Brewster* v. *Power* (10 Paige, 562) was a case where the only point involved, and the only one decided, was whether the plaintiff was and must be a creditor at the time of the conveyance, in order to avail himself of the interest secured to creditors under the statute. The chancellor dismissed the bill, but, in the course of his opinion, made the following remark : " I am not prepared to say that a judgment for such a debt would not create a preferable lien in equity upon such real property, except as against a purchaser for a valuable consideration."

In *McCartney* v. *Bostwick* (32 N. Y., 53), the plaintiff had prosecuted the defendant to judgment and execution in Minnesota, where he resided, and then commenced an action in this State, to reach property which had been paid for by the debtor and transferred to his wife.

I infer from the opinions that the court declined to decide, whether in such a case it was necessary to exhaust the legal remedies. At all events, such is the most favorable construction of the case for the plaintiffs.

PORTER, J., who delivered one of the opinions, said : " The case presented being one of pure trust, we are not prepared to say that the action might not have been maintained without recourse in the first instance to all attainable legal remedies against the principal debtor ; but it is unnecessary to determine this question, as the fact is admitted that all remedies at

law were exhausted against the debtor in the State in which he resided, and that in this State no legal remedy was available." DAVIS, J., who also delivered an opinion, said : " The case is an anomalous one. There exists concededly in the farm held by the respondent a pure trust in favor of the appellants. But to reach and apply this trust estate, a general rule of equity requires that they should have exhausted their legal remedy." The case was decided upon the ground that the plaintiffs had exhausted all available legal remedies, and that the court would entertain jurisdiction by virtue of its inherent equitable powers.

The opinions of the learned judges in the two cases referred to, although not at all decisive, and not very explicit upon the main point, are not antagonistic to the views above expressed. The most that can be said is that one or two of them entertained an undefined impression that the words " resulting trust," as used in this statute, meant something more than a declaration that the property was liable for existing debts, to be enforced in the mode prescribed for reaching other equitable interests.

The learned chancellor was not prepared to say but a judgment might constitute a "*preferable lien;*" but as it was unnecessary to decide it, he refrained from expressing an opinion, and PORTER, J., was not prepared to say but the claim might be enforced without resort to any legal remedies, but he expressly declined on behalf of the court any intention to determine the question, while DAVIS, J., held that although the court could exercise jurisdiction independently of the statute, the general rules of equity required that the legal remedies should be exhausted. The decision in both cases was undoubtedly right, and it is quite unnecessary in this case to criticise any of the intimations. The question of a lien was not involved in either case. If it should be conceded that it was not indispensable to exhaust the legal remedies, and that an action would lie by a creditor at large, no lien would exist until an action was actually commenced for that purpose. The statute does not restrict the creditor to this property. It

gives him a right to pursue the property in the hands of the fraudulent grantee, but he is not obliged to do so; and until he takes some decisive legal step evincing his purpose to do so, no lien is created, any more than would have been, upon property fraudulently transferred by the debtor himself.

The harmony and analogies of the law are better preserved, by requiring all available legal remedies to be resorted to, as a preliminary requisite to an action for the application of the trust-property. It is difficult to perceive any distinction, or any reason for it, between the rights of creditors as to property fraudulently transferred by the debtor himself, and property paid for by him and transferred to a third person. Why should creditors have different and superior rights to enforce their debts, in the latter case, to those enjoyed in the former? I can see no reason for any distinction, and I do not believe the statute has created any. But, in either case, the commencement of an equitable action is necessary to constitute a lien or charge, in any legal sense, upon the land.

These views dispose of the plaintiffs' case. The judgment, or debt, is the foundation of this action. Both were extinguished before the action was commenced. The plaintiffs sought to enforce and secure a lien against this property, by virtue of their rights as creditors. The debt having been discharged, they were not creditors, and could not avail themselves of the resulting trust, which was secured to creditors only. That relation must exist at the time of the conveyance, and at the time when the action is commenced, to establish the lien.

The judgment must be affirmed.

All concur, except GROVER, J., dissenting.

Judgment affirmed.