PEYSER *v.* HALSTED *et al.*

(*Supreme Court, Special Term, New York County.*   April, 1889.)

1. PARTNERSHIP—RETIRING PARTNERS—EVIDENCE.
    It appeared that M., who had been a member of a firm, had not for several years preceding January 1, 1873, been credited with profits as such, but with interest on the amount appearing on the firm books as his capital in the business: that the firm expired by limitation on December 31, 1872, and that some time before that day

M. had retired from active participation in the business. A notice was published that M. would retire from the firm on December 31, 1872. The new firm began business January 1, 1873, opened new books, and changed M's account to a "special account," crediting him with no profits, and charging him with no losses, but only allowing him interest on the money which he had in the business. *Held*, that M. was not a member of the new firm.

2. SAME—ASSIGNMENT—PREFERENCES—RIGHTS OF CREDITORS.

A preferred creditor of an insolvent firm who has been paid by the assignee, cannot be compelled, by a creditor of the firm who has no lien at the time of the payment, to refund the amount so paid.

Action by Henry M. Peyser against William M. Halsted and others.

*John J. Adams* and *Charles E. Hughes*, for plaintiff.    *William Pierpont Williams* and *William B. Hornblower*, for defendants.

INGRAHAM, J. The plaintiff in this action claims to have established that at the time of the assignment by Halsted, Haines & Co., that firm was not indebted to the estate of John K. Meyers, and the first question to be determined is whether or not the amount directed to be paid to the Meyers estate as a preferred debt by the assignment was a valid and subsisting obligation of the assignors. I think that the determination of that question depends upon the question whether John K. Meyers, the defendants' testator, continued a member of the firm of Halsted, Haines & Co. down to the year 1877. It appears that Mr. Meyers was a member of said firm prior to 1872; that some time prior to the 31st of December he had retired from active participation in the management of the business of the firm; that for the two or three years prior to December 31, 1872, he had not been credited with profits as such, but with interest on the amount appearing on the firm books as his capital in business, at the rate of 12 per cent. per annum; that the firm of Halsted, Haines & Co., known as firm "I," expired by limitation on the 31st of December, 1872; that a new firm was organized, to commence on the 1st of January, 1873, known as firm "K," and that at that time there appeared to the credit of John K. Meyers on the books of the firm "I," as his capital in that firm, the sum of $131,828.85. The new firm commenced business on the 1st of January, 1873. New books were opened, and the heading of the account of John K. Meyers was changed to "John K. Meyers, Special Account." From that time on Meyers was credited with no profits of the new firm, as profits, and was charged with no losses, and took no part in the management of the business of the firm. A notice was published in one of the newspapers that "Mr. John K. Meyers retires from our firm this date, December 31, 1872. HALSTED, HAINES & Co." I do not think that this evidence would sustain a finding that John K. Meyers was a member of the new firm that commenced on January 1, 1873. The question is not whether parties dealing with the firm had sufficient notice of Mr. Meyers' retirement, so that he would not be liable for an indebtedness incurred by the new firm, subsequent to January 1, 1873, nor is it a case where a firm continued on without any fixed period for its termination, and where a member of the firm seeking to avoid responsibility must show affirmatively that he has retired, but whether or not, as a question of fact as between the partners themselves, Mr. Meyers could be held to be a member of that new firm. All of the facts proved tend to negative that Meyers was a member of that new firm after January 1, 1873. On the 1st of January, 1873, John K. Meyers was entitled to be paid the amount due to him as his share of the assets of the firm after payment of the debts. The new firm took all the assets of the old firm from which this amount due to Meyers could have been realized, and it was competent for the new firm to assume the liabilities of the old firm. They did, in fact, discharge the current liabilities, and in all their subsequent proceedings recognized their obligation to John K. Meyers to pay him the amount that appeared to be due to him. The negotiation between John K. Meyers, on his withdrawal from the firm, was conducted by Mr. Haines. Both John K. Meyers and Mr. Haines are dead, and it is not surprising, after the lapse of 16 years and the

death of the parties to the negotiation, that proof of the terms upon which Mr. Meyers retired from the firm is not forthcoming.   There is enough to show, however, that the new firm did assume the payment of this obligation, and on the formation of each successive new firm the amount of this indebtedness, less the amount paid to Meyers, or, after his death, to his executors, appears in the books of each firm as a debt of the firm due to Meyers or his estate; and in the assignment made in 1884 the balance due Meyers is recognized as a liability of the firm making the assignment; and, in the absence of fraud, I do not see how the firm that existed at the time of the assignment could have disputed its liability to Meyers' estate to pay the amount then due.

Whether or not the new partner, Mr. Bentley, could have disputed his individual liability to pay this Meyers claim is not involved.   It is clear that when the payment of that claim was assumed and recognized as an existing indebtedness of the new firm, such new firm would be liable for the amount due.   I have come to the conclusion, therefore, that, on the evidence before me, Halsted, Haines & Co. were indebted to Meyers in the amount for which that estate was preferred by the assignment.   Immediately after the assignment was executed the estate obtained a judgment against the assignors for the amount of its claim, and issued execution thereon, and the assignee paid the amount of that judgment out of the proceeds of the assigned estate.

The question is here squarely presented whether or not a creditor of an insolvent firm, whose claim is preferred by an assignment made for the benefit of creditors, and has been paid by the assignee from the moneys realized by him from the sale of the copartnership property, can be compelled to refund the amount so paid in a creditor's action, brought by a creditor who has no lien upon the debtor's property at the time the payment was made, after the payment to the preferred creditors, the assignment being therein adjudged fraudulent as to creditors.   The jurisdiction of a court of equity to assist a creditor to obtain the application of the debtor's property to the payment of his debt arises only when his remedy at law has been exhausted.   It must appear that the creditor has obtained his judgment against the debtor, and either that an execution has been issued, and that, in consequence of some act of the debtor that is void as to the creditor, the property of the debtor which would be liable to execution has been placed out of his hands, in which case he may invoke the aid of a court of equity to remove the obstruction, or that the execution has been returned unsatisfied, and that there are equitable assets of the debtor which cannot be reached by the execution.   In such a case, by filing the bill, an equitable lien upon the debtor's interests in such property is created, and the court will apply the property to the satisfaction of the debt.   *Bank* v. *Olcott*, 46 N. Y. 21; *Geery* v. *Geery*, 63 N. Y. 256.   Until such an action is commenced, however, the creditor has no lien upon the equitable interests of the debtor, and this is well illustrated by the case of *Bank* v. *Olcott*, 46 N. Y. 19.   In that case plaintiff obtained a judgment against the defendant Olcott, and issued execution, which was returned unsatisfied.   Subsequently Olcott obtained a discharge in bankruptcy.   Subsequent to such discharge plaintiff commenced a creditor's action to reach property conveyed to the wife of the debtor in fraud of his creditors.   It was held that the creditors obtained no lien upon the debtor's interests in this property prior to the discharge, and, as the discharge extinguished the debt and the judgment, plaintiff could not maintain the action.   CHURCH, C. J., says, at page 17:  "Although there may be some apparent confusion from the use of terms, I do not think the interest of the creditors constitutes a lien within the meaning of the bankrupt act, nor in any such legal sense as to give creditors a priority, except by means of the usual equitable remedies.   * * * In some general sense creditors have an equitable lien upon the property thus situated.   * * * So debts are an equitable lien upon property fraudulently transferred by a debtor, and it may be said every debtor is a trustee for his creditors, and bound to use his property for their benefit,

and that creditors have an equitable lien upon the property of the debtor. But in all these cases the usual remedies are to be pursued to create and enforce the lien before a specific charge constituting an incumbrance is created." In the case last cited the court held that it was by the commencement of the action that the lien was created, and if, before the action was commenced, the debtor was discharged from the indebtedness, so that the creditor could no longer hold him liable, no lien could be created.

Applying the principle thus stated to the case at bar, when the assignee paid Meyers' estate the amount due it, plaintiff had no lien upon the property assigned by the assignment or the proceeds in the hands of the assignee. The debtors could, as against the plaintiff, apply this property to the payment of such of their debts as they chose. By the execution of the assignment they had directed the assignee to apply the proceeds of the property assigned to the payment of the debt due Meyers' estate, and the assignee, acting under that direction, paid the Meyers debt, and the Meyers estate received the money and satisfied the debt. This, in itself, was a valid disposition of the debtor's property, and, on the money being paid to the creditor, it ceased to be the money of the debtor or of the assignee. It belonged to the creditor. The right of the Meyers estate to have its judgment discharged out of the property of the judgment debtor was at least equal to the right of the plaintiffs to have their debts paid, and on the payment of the judgment neither the debtor nor his assignee had any further interest, either legal or equitable, in the money so paid. It had been received by an honest creditor in payment of an honest debt, and the creditor was entitled to hold it until some one presented himself with a better title, and claimed it. Plaintiffs then commenced this action to set aside the assignment as fraudulent. An equitable lien upon the property of the debtors was then "created," but it was upon the property, legal or equitable, that the debtors had when the lien was created to which it attached; not what they had when they made the assignment. *Edmeston* v. *Lyde*, 1 Paige, 640. If the assignment was void as to the plaintiff, the property, or the proceeds of the property, that remained in the hands of the assignee, was, in equity, the property of the assignor, and to such property the lien created by the commencement of the action attached, but the money that the assignee had paid in the performance of his trust, either to pay the necessary expenses or to pay the debts of the assignors directed to be paid by the assignment, was not the property of the assignor, nor did he have any interest in it. The ground upon which Chancellor WALWORTH placed his decision that the assignee was not liable to account for the proceeds of property assigned by an assignment, subsequently declared fraudulent as to creditors, which had been paid out by the assignee in the performance of his trust, in *Ames* v. *Blunt*, 5 Paige, 23, sustains this conclusion. The chancellor says: "I apprehend, therefore, that the liability of the assignees for the proceeds of the assigned property, which has been distributed to the *bona fide* creditors under the assignment, must depend upon the question whether the legal or equitable rights of the complainants have been impaired or affected by such distribution; in other words, whether they have in fact been defrauded thereby. The principle, then, upon which the decision of this court in *Wakeman* v. *Grover*,[1] and of the vice-chancellor in the present case, is sustainable, is that the proceeds of the assigned property had been distributed according to the directions of the assignors in payment of *bona fide* creditors to whom such proceeds might have been lawfully distributed by the assignors themselves at any time before the complainants had obtained any legal or equitable lien thereon, and that, therefore, the complainants have not been defrauded or injured by such distribution. * * * The remedy of the complainant, so far as the assignees were concerned, is therefore against the proceeds remaining undistributed among the *bona fide* creditors at the time of the filing

[1] 4 Paige, 23.

of the complainants' bill." And in the case of *Murphy* v. *Briggs*, 89 N. Y. 451, Judge MILLER, delivering the opinion of the court, in speaking of a mortgage made by a grantee in a deed fraudulent as to creditors, says: "When a transfer is made to a stranger, to bring himself within the provisions of the statute as to a purchaser he must show that he has an equity which is paramount to that of his vendor, and this can only be done by showing that he has parted with value, and is not chargeable with notice of the fraud; but when the transfer is to the creditor of the vendor, a different principle prevails. It is not necessary to show a new consideration, as the transaction amounts to nothing more than a voluntary preference of one creditor over another. The rights of the mortgagees as creditors to have their debts preferred by mortgages on the property of the debtors are equally equitable with the claim of the creditors, and no valid ground is apparent why they should be placed behind other creditors when the liens of the latter are of later date."

The Meyers estate does not claim to hold this money under the fraudulent assignment. If that assignment had never been made, the estate would have the right to hold the money as money of its debtor which it had received in payment of its judgment, and whether the assignment is void or not is entirely immaterial. *Brinckerhoff* v. *Brown*, 4 Johns. Ch. 675. By accepting the money from the assignee, the Meyers estate was, by well-settled principles, estopped from subsequently attempting to avoid the assignment; but there is no principle which would compel it to refund the money paid to it as a creditor of the assignor in satisfaction of its judgment, and which, as such creditor, it was entitled to hold because the instrument which authorized its payment was declared void between the parties to it and creditors. Suppose an agent with money of his principal in his hands had, without authority from the principal, paid the money to a person to whom the principal was indebted as a payment of the debt. Could another creditor of the principal, in a creditor's action, recover from the person who had been paid his debt the amount paid to him? It is clear he could not, and yet the only distinction between the cases is that in this case the payment was made with the assent of the debtor, as expressed by an instrument which, at the time the payment was made, was valid. The cases cited by counsel for the plaintiff have all been examined. It is conceded that none of them directly decide the question here presented. It is sufficient to say that no recognized principle of equity would justify the court in taking from the estate of Meyers money that the estate had received in payment of a debt and giving it to another creditor of the same debtor. It follows, therefore, that the defendants, Meyers' executors, are entitled to judgment, with costs.