## MANDEVILLE v. CAMPBELL et al.

(Supreme Court, Appellate Division, First Department. December 8, 1899.)

FRAUDULENT CONVEYANCE—RIGHTS OF CREDITORS.

Under 1 Edmond's Rev. St. (2d Ed.) p. 677, § 51, declaring that no trust shall result to one paying the consideration of a conveyance to another, and Id. § 52, declaring the conveyance presumptively fraudulent as against creditors of the person paying the consideration, and that, where a fraudulent intent is not disproved, a trust shall result in favor of all such creditors, all creditors are not entitled to share in the property without regard to proceedings taken; nor does the creditor have priority who first has judgment against such debtor, and execution unsatisfied, but he has priority who first acquires a lien by suit in the nature of a creditors' action.

Appeal from special term, New York county.

Action by Jennie J. Mandeville, as guardian of Jennie R. Morgan and others, against Jane E. Campbell and others, to foreclose a mortgage. From a final order in a surplus-money proceeding, the Central National Bank of the City of New York appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

George A. Strong, for appellant Central Nat. Bank.

J. Woolsey Shepard, for respondents Daniel H. and Hiram C. Bennett.

RUMSEY, J. Mrs. Mandeville, the plaintiff, brought this action to foreclose a purchase-money mortgage upon the property of the defendant Mrs. Campbell, and it was sold under the judgment in the action. Upon the sale there was a surplus of something over $12,000, which was deposited with the city chamberlain, and this proceeding was commenced to obtain it. It appeared that the property which had been sold was conveyed in December, 1894, to Mrs. Jane E. Campbell, the wife of William C. Campbell. It was shown that the consideration for the conveyance to Mrs. Campbell was paid entirely by her husband. At the time he paid it he was indebted to the Central National Bank in the sum of more than $10,000. He was also indebted to Daniel H. and Hiram C. Bennett to a considerable amount. Each of these parties made a claim to these surplus moneys. Upon the hearing before the referee in that matter it was made to appear that the Central National Bank recovered a judgment against Campbell on the 8th of February, 1896, and that an execution was issued, and returned unsatisfied, on the 7th day of April. The Bennetts obtained a judgment against Campbell on the 15th day of April, 1896, upon which an execution was issued and returned unsatisfied. On the 29th of May, 1896, the Bennetts began a suit against Mrs. Campbell to enforce their lien as creditors upon the land which had been conveyed to her as above stated. In that action a judgment was entered on the 1st day of July, 1898, by which it was adjudged that the conveyance was taken in the name of the defendant Jane E. Campbell "for the purpose of cheating and defrauding the creditors of the defendant William Campbell, among whom were these plaintiffs [the Bennetts], and also for the purpose of hindering and delaying these plaintiffs from the collection of their just debt against the defendant William Campbell," and it was therefore adjudged that the premises should be sold, and out of the proceeds the plaintiff's debts should be paid; and that the real property of Mrs. Campbell was subjected to the payment of the judgment of the Bennetts. It appeared further that the bank began a suit against Mrs. Campbell and the others for the purpose of enforcing its lien upon this land on the 11th day of March, 1897, and a lis pendens in that suit was filed at that time. That action was never tried, and no judgment was ever entered in it. These facts having appeared before the referee in the surplus-money proceedings, he determined that Daniel H. and Hiram C. Bennett were entitled to all the surplus money, and that the Central National Bank was not entitled to any part thereof. His report was confirmed, and from the order confirming it this appeal is taken.

The statute by virtue of which each of the parties to this action claims to have acquired a lien is as follows:

"Where a grant for a valuable consideration shall be made to one person, and the consideration thereof shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made; but the title shall vest in the person named as the alienee in such conveyance, subject only to the provisions of the next section."

"Every such conveyance shall be presumed fraudulent as against the creditors, at that time, of the person paying the consideration; and where a fraud-

ulent intent is not disproved, a trust shall result in favor of such creditors, to the extent that may be necessary to satisfy their just demands."

1 Edmond's Rev. St. (2d Ed.) p. 677, §§ 51, 52.

These provisions are now embodied in section 4 of the real-property act (Laws 1896, c. 547). It is claimed by the appellant that this statute makes the grantee in the conveyance a trustee for all the creditors. The nature of the relation which exists between the grantee in such a conveyance and the creditors of the person paying the consideration is undoubtedly a trust. The appellant claims that, as it is a trust, the rights of the creditors are to be determined by the general principles of the laws of trusts, and that each one has the same right as any other one to resort to the fund. But, if that is not so, and the fund is to be disposed of like other ordinary equitable assets of the creditors, the appellant insists that it has a prior right, because its judgment was first recovered, and its execution first returned unsatisfied. The respondents claim, on the contrary, that, although the relation between the grantee and the creditors is that of a trust, yet that trust can only be established by action on the part of a creditor who seeks to benefit by it, and that the rule which applies in the case of an ordinary creditors' bill, that the one first perfecting the action to reach it should be held to acquire a prior lien, is a proper rule to establish. There is no doubt but that the relation between the parties is purely a trust one. Garfield v. Hatmaker, 15 N. Y. 475; McCartney v. Bostwick, 32 N. Y. 53. The property which is to be reached under these provisions of the statute, could not be taken at law for a debt of the person paying the consideration. It could only be reached in equity by a creditor who has been unable to collect his judgment by legal process. In this respect it is no different from other equitable assets which may be reached by a creditor upon the failure to collect his debt by the usual legal means. It is settled that no creditor has a standing to reach such assets of his debtor until his remedy at law has been exhausted. The same rule has been applied to efforts to reach the assets created by this statute for the benefit of creditors. Bank v. Olcott, 46 N. Y. 12; Allyn v. Thurston, 53 N. Y. 622; Estes v. Wilcox, 67 N. Y. 264. This same principle was also applied in McCartney v. Bostwick, supra, under circumstances which are explained in Bank v. Olcott, where it is shown that that case is no exception to the rule requiring that the legal remedies should be exhausted before proceeding under this statute against a grantee. In Bank v. Olcott it was held that the provisions of this statute do not give a specific lien upon the property, but an equitable right, to be enforced by a suit in equity, and that the commencement of the equitable action and the filing of the lis pendens were necessary to constitute a lien. Chief Justice Church, in delivering the opinion of the court in this case, says:

"I do not think the interest of the creditors constitutes a lien, within the meaning of the bankrupt act; nor in any such legal sense as to give creditors a priority, except by means of the usual equitable remedies. A lien is not a property in the thing itself, nor does it constitute a mere right of action for the thing. It more properly constitutes a charge upon the thing. 1 Story, Eq. Jur. § 506; 1 Burrill, Law Dict. tit. 'Lien.' In some general sense creditors have

an equitable lien upon the property thus situated. So they would have if a general liability, instead of a resulting trust, had been declared. So debts are an equitable lien upon property fraudulently transferred by a debtor, and it may be said that every debtor is a trustee for his creditors, and bound to use his property for their benefit, and that creditors have an equitable lien upon the property of the debtor. But in all these cases the usual remedies are to be pursued to create and enforce the lien before a specific charge constituting an incumbrance is created. There is no mystery in the term 'resulting trust.' After adopting the fifty-first section, it was indispensable to make some provision to preserve the rights of creditors, otherwise the grantee would have held the title absolutely against creditors and all others. Hence the fifty-second section was adopted, which placed the property in the same relation to creditors as it would have been if the debtor himself had fraudulently transferred it, and the words used were appropriate for that purpose. The object of the statute was to cut off all interest in the person paying the consideration, and then to declare property liable for his debts; but this liability can only be enforced in the usual mode. A creditor at large cannot enforce the liability without a preliminary judgment and execution. When the legislature transformed this from a legal into an equitable interest, we must presume that they intended to apply equitable rules and principles existing at the time for its enforcement. One of them is that, before the equitable interests of a debtor can be reached in equity, all available legal remedies must be exhausted."

This case was followed in the case of Allyn v. Thurston, supra, and Estes v. Wilcox, supra. The effect of these cases is to compel a creditor who wishes to take advantage of this statute to begin the usual action in the nature of a creditors' action for the purpose of acquiring a lien upon the property which he seeks to reach. That lien is created only by the commencement of the action, and, if the subject of the action is real estate, by the filing of a lis pendens and the service of a complaint. Edmonston v. McLoud, 16 N. Y. 543. When a creditor has taken that step, he has made, as is said by Justice Swayne in Miller v. Sherry, 2 Wall. 237–249, 17 L. Ed. 827, "an equitable levy," and he has obtained a specific lien upon the property upon which that equitable levy is made. Storm v. Waddell, 2 Sandf. Ch. 494. Up to the time when that lien has been acquired, the rights of all creditors in the fund are alike, but, when the lien has been gained, the creditor who has it has by well-established rules a priority over all other creditors, which gives him a preference, and entitles him to be first paid out of the fund upon which his lien exists. Corning v. White, 2 Paige, 567. There is nothing in the nature of this fund which distinguishes it from any other "equitable asset," as it is called by Justice Church in Bank v. Olcott, and when the action has been begun to reach the land for the payment of the debt the same rule should be applied in this action as in every other creditors' action, and the creditor who first obtains his lien should be entitled to the same preference to the creditor in such an action. That such is the rule seems to be recognized, if, indeed, it is not established, by what is said in the case of Brown v. Chubb, 135 N. Y. 174, 31 N. E. 1030. In that case the plaintiff had brought an action to reach land which had been paid for by the judgment debtor, but had been conveyed by the defendant, who was his daughter. It appeared that the defendant, after having received the title to the land, had bought a judgment for a substantial amount against her father, the judgment debtor. Being in possession of the land, she claimed that, although

the land was liable to her father's creditors, yet, as she was a creditor, and in possession of the land before the plaintiff's action had been begun to reach it, she had in that way acquired a lien to the extent of her judgment which was prior to the plaintiff's. She asked the court at special term to so hold, but it was refused. Upon appeal to the court of appeals, however, it was held that she was right in her contention, and that the lien which she had acquired by the purchase of the judgment, coupled with the possession of the land, was prior to that of the plaintiff, and it should have been so determined. It is quite evident that, if the rights of all the creditors in this land were alike, it could not have been determined that Mrs. Chubb had a priority; and it is equally evident that, unless the rule had been applied that the person acquiring the first lien was to have preference, the judgment could not have been reversed. The case must therefore be regarded as a determination by the court of appeals that the ordinary rule which is applicable in creditors' actions that the person who first acquires a lien is to have the benefit of that lien, and to have preference over other creditors, is to be applied to actions brought to enforce the rights of a creditor under this statute.

The order, therefore, was correct, and must be affirmed, with costs. All concur.