(42 Misc. Rep. 306.)

### MARSHALL v. UNITED STATES TRUST CO. OF NEW YORK et al.

(Supreme Court, Special Term, New York County.    December, 1903.)

**1. TRUST ESTATE—RIGHTS OF JUDGMENT CREDITOR.**

 A mother conveyed a life estate in mortgaged property on A. avenue to her son, and gave him by will the income of all her residuary estate, and directed that her trustees should pay the mortgage out of the sale of her property on M. avenue. The son leased the property on A. avenue, and entered into partnership with the lessee, making the lease a partnership asset. Judgments were recovered against the partnership, and the trustees, with knowledge of these facts, and at the request of the son, failed to pay the mortgage on the A. avenue property after sale of the property on M. avenue, and allowed the mortgaged property to be sold, and bought it in with money consisting in part of the proceeds of the M. avenue property, and sold the property on A. avenue, and paid the income to the son. *Held,* that an assignee of a judgment creditor of the firm had a lien on so much of the fund as was represented by that part of the proceeds of the sale of the property on M. avenue as the will had directed to be used in payment of the mortgage on the property on A. avenue.

Action by Charles Cyrus Marshall against the United States Trust Company of New York and others. Judgment for plaintiff.

J. M. Harrington, for plaintiff.
E. W. Sheldon, for defendants.

SCOTT, J. This is an action by a judgment creditor of one William C. Flanagan to compel payment of the judgment out of the income of a fund held by the defendant trustees. On October 28, 1897, the plaintiff's assignor recovered a judgment against Flanagan and another, which remains unpaid, and upon which execution has been duly issued and returned unsatisfied. On November 10, 1896, Mary A. Flanagan, the mother of William C. Flanagan, conveyed to him a life estate in certain property at the corner of Avenue B and Fourteenth street, in the city of New York. The property then was, and continued to be until the death of Mrs. Flanagan, subject to a mortgage for $12,000, held by one Kinken. Mary A. Flanagan died on December 15, 1896, leaving a will executed on March 19, 1895, prior to the grant of the life estate to her son, and a codicil thereto executed on November 20, 1896, 10 days after the grant of the life estate. The defendants United States Trust Company and James J. Williams were appointed executors. By her will, after numerous bequests and annuities, the testatrix directed her executors to pay over all the net income of all her property to her son during his life. By her codicil she directed her executors to pay out of the moneys realized upon the sale of certain property on Mott avenue, which she directed to be sold, "any mortgage upon the premises situate on the southwest corner of Avenue B and Fourteenth street [being the property in which she had given her son a life interest], whether the same be owned by me at the time of my death or shall have been transferred to my said son, but not otherwise." In January, 1898, the defendant executors sold the Mott avenue lots for a sum far in excess of the amount of the mortgage upon the Avenue B property. In the meantime, and on April 14, 1897, William C. Flanagan had leased the Ave-

nue B property to one Francis Mullen for a term of 10 years, from May 1, 1897, and on April 29, 1897, had formed a copartnership with said Mullen to carry on business on said premises. By the terms of the copartnership agreement, it was provided that said lease should become partnership assets, and become merged in them. The copartnership was unsuccessful, and failed before the foreclosure hereafter mentioned. The plaintiff's judgment is against both Flanagan and Mullen. Other judgments were also obtained by other persons against Flanagan and Mullen. While his affairs were in this condition, Flanagan, through his attorney, requested the defendant trustees not to pay the mortgage on the Avenue B property, but to permit the same to be foreclosed; and this the defendant trustees, with full knowledge of the judgments against Flanagan, the lease, and the copartnership agreement, consented to. The mortgage was accordingly foreclosed, and the property bought in by the defendant trustees with the funds of the estate for $18,300. The expenses of the sale amounted to $558.66. There were due arrears of interest amounting to $1,006.93, and taxes amounting to $571.80. A surplus was realized amounting to $4,162.61. Surplus proceedings were had, to which plaintiff's assignor was made a party, but he did not prove his claim. Other judgment creditors of Flanagan did prove their claims, and an order was made providing for the satisfaction of their claims out of the income of the surplus. Thereafter, upon Flanagan's application, a gross sum was set apart to him in lieu of his interest in the surplus, and the amount so set apart was applied to the satisfaction of the claims proved in the surplus money proceedings. The property was bought in by the executors in August, 1898, and in the following February, with the consent of William C. Flanagan, they sold it for $21,000, which they now hold.

The plaintiff seeks to follow this fund, and compel the application of the income thereof to the payment of his judgment. He has not joined any other creditor, and is not bound to do so. The commencement of the action gives him a preferential lien upon the equitable assets which he now seeks to reach, and which can be reached only by an action in the nature of a creditors' bill. Corning v. White, 2 Paige, 567; Edmeston v. Lyde, 1 Paige, 637; Mandeville v. Campbell, 45 App. Div. 512, 61 N. Y. Supp. 443; First Nat. Bank v. Shuler, 153 N. Y. 163, 47 N. E. 262, 60 Am. St. Rep. 601. The facts shown upon the trial leave no doubt that the refusal to pay the mortgage, its foreclosure, and purchase by the trustees, were all parts of a scheme devised by Flanagan, and acquiesced in by the trustees, to prevent his creditors from reaching the estate which his mother's deed and will had created for him, and to so divert the money necessary to pay off the mortgage that he could enjoy the income therefrom without interference from his creditors. His life estate in the Avenue B property was subject to the payment of his debts, and, if the property had been freed from the mortgage, as the mother intended that it should be, the life estate would have been enhanced in value, and the fund for the satisfaction of his creditors correspondingly increased. But with the mortgage left unpaid and foreclosed, the life estate was gone, and the money which should have been ap-

plied to its preservation and enhancement fell into the residuum of the estate, the income of which Flanagan was to receive, and which, since it was not large, was safe from any attempts at sequestration on the part of his creditors. In short, it was a scheme or device, by disregarding the plain instructions of the will, to diminish that portion of his estate which could be reached by his creditors, and to correspondingly swell that portion of the trust estate from which he was to receive an income which would be beyond his creditors' reach. The codicil contained an explicit direction to sell certain property, and out of the proceeds to pay off the Kinken mortgage on the Avenue B property. No discretion was left to the executors, and no contingency was provided to defeat this purpose. That direction took effect when the testatrix died, and, as soon as the Mott avenue property had been sold, so much of the proceeds as was necessary to pay off the Avenue B mortgage stood appropriated to that purpose. Flanagan or any of his judgment creditors could have required the executors to so apply it. Doubtless Flanagan's request that the mortgage be not paid would have operated, by way of estoppel, as a bar to any action he might take against the trustees arising out of their failure to pay the mortgage, but that bar does not stand in the way of any creditor who did not join in the request. It was held in Schenck v. Barnes, 156 N. Y. 316, 50 N. E. 967, 41 L. R. A. 395, that a person cannot place his property in trust, with remainder over, reserving to himself the beneficial interest for his life, and thereby put his income beyond the reach of his creditors. This is, in effect, precisely what Flanagan undertook to do, so far as concerns the amount necessary to pay the mortgage on the Avenue B property. In fact, all that was effected was to place the income beyond the creditors' reach. The title to the property, which theretofore had been in the trustees, remained in them; the mortgage debt was satisfied out of the foreclosure price, which was paid by the trustees out of the funds of the estate, made up in large part of the proceeds of the Mott avenue sale; and Flanagan, as life beneficiary of the residuum, continued to receive the income. I know of no rule of law or principle of equity which will justify the protection of the debtor's estate by such means as this against the just claims of his creditors. The plaintiff is therefore entitled to be placed in as good a position as he would have been if the terms of the will had been complied with, and Flanagan's life estate had been preserved. The trustees, after they bought the property, held it subject to Flanagan's life estate, as they would have held it without buying, if they had paid the mortgage, and when they sold the property they continued to hold the proceeds in the same manner, and subject to the same interest. They realized upon the sale of the property $21,000, but Flanagan's life estate does not attach to all of that sum. They had been obliged to pay $1,006.93 for interest, and $571.80 for the taxes, which should have been paid by the life tenant, and would have had to be paid by him, to preserve his estate, even if the trustees had paid off the mortgage. There was a surplus on the sale amounting to $4,162.61, which represented in part the value of the life estate, and in part the value of the remainder. So much of this surplus as represented the remainder was not subject

to plaintiff's judgment. So much of it as represented the value of the life estate was available to Flanagan's judgment creditors, including plaintiff's assignor, who had notice and full opportunity to share in it. Having refused to avail himself of this opportunity, he must be deemed to have waived the right to participate in so much of Flanagan's life estate as was represented by the surplus. This surplus, however, was arrived at by deducting from the price bid not only the principal debt, interest, and taxes, but also the expenses of the foreclosure action and sale, amounting to $558.66, which would not have been incurred if the executors had performed their duty and paid the mortgage, and should not, therefore, be allowed in diminution of the fund to which the life estate attaches. The plaintiff will therefore be put in the same position, so nearly as possible, as he would have been if the mortgage had been paid off, if, out of the funds now held by the trustees, the sum of $15,817.32 be held to represent the property in which William C. Flanagan has a life estate under his mother's deed to him and the codicil to her will. The plaintiff's lien upon the life estate, or its equivalent in the hands of the trustees, attached at the commencement of this action. First Nat. Bank v. Shuler, supra. He is therefore entitled to recover, to the extent of the amount now due him upon his judgment, whatever interest has been earned upon the sum herein found to represent the property to which the life estate attaches, from the date this action was commenced.; and, if that be insufficient, he is entitled to be paid the interest on that sum as it is earned, until his judgment be fully paid. It did not appear on the trial how much income has been and is earned, and it did appear that any sum found to be held by the trustees subject to the life estate was also subject to certain deductions for expenses and commissions, the amount and nature of which were not specified. · These matters can probably be supplied· by stipulation, and, if not, a day will be fixed to take evidence upon the subject. The plaintiff is entitled to the costs of this action. Findings and decree may be settled on three days' notice.

Judgment accordingly.