(45 Misc. Rep. 500.)

### GROSSO v. MARX.

(Supreme Court, Special Term, New York County. December, 1904.)

**1. BANKRUPTCY—DISCHARGE—UNCANCELED PAYMENTS.**

Where a judgment debtor has been discharged in bankruptcy, the fact that there are uncanceled judgments docketed against him does not render the real estate which he formerly owned unmarketable.

**2. SAME.**

Bankr. Act July 1, 1898, c. 541, § 63, 30 Stat. 562, 563 [U. S. Comp. St. 1901, p. 3447], providing that a discharge in bankruptcy shall release a bankrupt from all provable debts, with certain exceptions, discharges absolutely uncanceled judgments against the bankrupt, and the debts on which they are based.

**3. SAME.**

Where uncanceled judgments are docketed against the prior owner of real estate, who has been discharged in bankruptcy, it does not render the title of the present owner of the land unmarketable because such judgments were not canceled as provided by Code Civ. Proc. § 1268.

**4. SAME—SCHEDULE.**

That the schedule in bankruptcy does not state with exactness the names of creditors does not vitiate the bankruptcy proceeding.

Action by Vincenza Grosso against Solomon Marx. Judgment for plaintiff on terms.

Harold Swain, for plaintiff.

Albert Zimmermann (Moses Weinman, Albert Zimmermann, and Adam K. Stricker, of counsel), for defendant.

GIEGERICH, J. This action was brought to compel the defendant to specifically perform a contract to convey to the plaintiff good title to the premises in suit, or, in the alternative, in the event that the defendant should be unable to specifically perform, for the recovery by the plaintiff of the sum of $500, paid on account of the purchase price, and the sum of $250, alleged to be the reasonable value of coun-

sel fees and disbursements in the examination of the title. On the day set for closing, the plaintiff refused to take the title the defendant was prepared to offer; basing such refusal on the ground that there were certain judgments unsatisfied of record against one George Jenkins, from whom the defendant acquired title. The judgments objected to were entered and docketed against Jenkins between April 15, 1898, and January 13, 1899. On November 29, 1898, Jenkins filed his petition in bankruptcy in accordance with the act of 1898, and the debts against his estate, including the judgments above mentioned and the debts upon which they were based, were properly scheduled. On February 8, 1899, about two months before Jenkins acquired the property in question, he obtained his discharge from all said debts, and that decree of discharge has never been revoked. He died before the trial of this action.

The first argument advanced on behalf of the plaintiff is that the title tendered was not marketable for the reason that the judgments against Jenkins had not been canceled pursuant to section 1268 of the Code of Civil Procedure, which provides as follows:

"At any time after one year has elapsed, since a bankrupt was discharged from his debts, pursuant to the acts of Congress relating to bankruptcy, he may apply, upon proof of his discharge, to the court in which a judgment was rendered against him, or, if rendered in a court not of record, to the court of which it has become a judgment by docketing it, or filing a transcript thereof, for an order, directing the judgment to be canceled and discharged of record. If it appears upon the hearing that he has been discharged from the payment of that judgment, or the debt upon which such judgment was recovered, an order must be made directing said judgment be canceled and discharged of record; and thereupon the clerk of said court shall cancel and discharge the same by marking on the docket thereof that the same is canceled and discharged by order of the court, giving the date of entry of the order of discharge. Where the judgment was a lien on real property owned by the bankrupt prior to the time he was adjudged a bankrupt, the lien thereof upon said real estate shall not be affected by said order and may be enforced, but in all other respects the judgment shall be of no force or validity, nor shall the same be a lien on real property acquired by him subsequent to his discharge in bankruptcy. Notice of the application, accompanied with copies of the papers upon which it is made, must be served upon the judgment creditor, or his attorney of record in said judgment, in the same manner as prescribed in sections 796 and 797 of the Code of Civil Procedure, if the residence or place of business of such creditor, or his attorney is known, but if unknown and cannot be ascertained after due diligence, or if such creditor is a nonresident of this state, and his attorney is dead, removed from, or cannot be found within the state, upon proof of said facts by affidavit a judge of the court may make an order that the notice of such application be published in a newspaper designated therein once a week for not more than three weeks, which publication shown by affidavit of the publisher shall be sufficient service upon such judgment creditor, of the application."

I cannot accede to this argument, because of certain plain provisions of the national bankruptcy act, which, being an enactment of Congress on a subject upon which the United States Constitution makes the power of Congress supreme and exclusive (Const. U. S. art. 1, § 8; Ocean Nat. Bank v. Olcott, 46 N. Y. 12), must, of course, prevail, if there is any conflict between the provisions of the bankruptcy act and the state law as embodied in the Code section above quoted. That there is no such conflict, I will attempt to show later. Section

17 of the bankruptcy act of July 1, 1898, c. 541, 30 Stat. 550, 551 [U. S. Comp. St. 1901, p. 3428], provides that:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as  *  *  *  (3) have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy."

The word "discharge" is defined in chapter 1, § 1 (30 Stat. 544 [U. S. Comp. St. 1901, p. 3419]), as follows:

" 'Discharge' shall mean the release of a bankrupt from all of his debts which are provable in bankruptcy, except such as are excepted by this act."

Section 63 of the act (30 Stat. 562, 563 [U. S. Comp. St. 1901, p. 3447]) prescribes what debts may be proved, as follows:

"Debts of the bankrupt may be proved and allowed against his estate, which are (1) a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition against him."

Provisions for the revocation of a discharge are found in section 15 (30 Stat. 550 [U. S. Comp. St. 1901, p. 3428]), viz.:

"The judge may, upon the application of parties in interest who have not been guilty of undue laches, filed at any time within one year after a discharge shall have been granted, revoke it upon a trial, if it shall be made to appear that it was obtained through the fraud of the bankrupt, and that the knowledge of the fraud has come to the petitioners since the granting of the discharge, and that the actual facts did not warrant the discharge."

The effect as evidence of orders in bankruptcy proceedings is declared in section 21f (30 Stat. 552 [U. S. Comp. St. 1901, p. 3431]) as follows:

"A certified copy of an order confirming or setting aside a composition, or granting or setting aside a discharge, not revoked, shall be evidence of the jurisdiction of the court, the regularity of the proceedings and of the fact that the order was made."

The effect of the above-quoted portions of the bankruptcy act is to discharge absolutely the various judgments complained of, and the debts on which they were based. The purpose of section 1268 of the Code is not to attempt to revive or continue an obligation which the federal law has destroyed, thus coming in conflict with the federal law, but, rather, within the limits of that law, to provide a method by which a judgment debtor may secure a cancellation upon the records of the various judgments against him which have been discharged under the bankruptcy act. If it be assumed that the purpose of section 1268 was to preserve the lien of the judgment until it had been canceled of record, then the section, to that extent, would be in contravention of the federal law, and void. It is not necessary to consider in this case whether a judgment embraced in a discharge, during the year said discharge remains subject to revocation under section 15, above quoted, stands on any different footing with respect to the provisions of section 1268 from a judgment embraced in a discharge which has continued unrevoked until after the expiration of the year limited by the statute, because the case presented is of the latter class.

On behalf of the plaintiff it is urged that the vendor, and not the purchaser, should have cast upon him the burden of clearing up the record title by securing a cancellation upon the records of the judgments in question; but, aside from the considerations above pointed out, it is not shown what course would be open to one party, any more than to the other, to secure such a cancellation after the death, as in this case, of the bankrupt, upon whom section 1268, by its terms, confers the right to make such application. Whatever can be done in that regard, however, can be done as well by the plaintiff after acquiring title as can now be done by, the defendant. I do not, therefore, perceive any undue hardship or inconvenience, even, in the operation of the statutes above mentioned, as I construe them.

It is further claimed that, irrespective of section 1268, some of the judgments are still in effect, because of a failure in the bankruptcy proceedings to properly schedule them or the debts they represent. I cannot perceive that there has been any such failure. One of the judgments was obtained by Jacob Ringle & Son, while in the bankruptcy schedules the name appears as "Jacob Ringler & Son." Another, obtained by G. Wellwood Murray, is scheduled as owned by Murray and Walter Stewart; their residence being given as No. 35 Wall street, which it is claimed is an office building, and obviously not the residence of the creditors. The same objection is made to the judgment in favor of Simeon Wolf, Sol. Kohn, and Joseph Ullman, who are well-known attorneys practicing in this city, and whose residences are given as No. 203 Broadway. Reliance is placed upon Sutherland v. Lasher, 41 Misc. Rep. 249, 84 N. Y. Supp. 56; but that case is altogether different from the present, in the very important circumstance that there the creditor whose name or address was incorrectly stated in fact received no notice of the proceeding, whereas in the present case each creditor did receive notice, or, at any rate, had knowledge of the proceeding, and was represented in person or by attorney.

My conclusion is that the plaintiff has failed to show any unmarketable defect in the title tendered by the defendant, but, inasmuch as a dismissal of the complaint would result in a forfeiture of the deposit made, and since the action appears to have been brought in good faith, and upon a new question, which it was important should be settled, as it is obviously one of frequent occurrence, I think a judgment should be given directing the defendant to convey the premises in question by the same title originally offered, but that the plaintiff should be required to pay the costs of this action, and an additional allowance, and submit to such other terms, if any, as may, upon the settlement of the decision to be entered herein, appear to be equitable.

Ordered accordingly.